UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARIBE DEMARIS BILLIE,<br>    *Petitioner*,<br>    *v.*<br>UNITED STATES OF AMERICA,<br>    *Defendant*. | Civil No. 3:10CV1122 (JBA)<br><br>June 13, 2013 |

**RULING ON PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Caribe Billie, proceeding pro se, petitions for a writ of habeas corpus and moves to set aside his sentence [Doc. # 1] under 28 U.S.C. § 2255. In support of his petition, Mr. Billie argues (1) that he was denied effective assistance of counsel, and (2) the Government coerced him into his guilty plea. For the reasons discussed below, no evidentiary hearing is necessary, and Mr. Billie's petition will be denied.

I.      **Factual and Procedural Background**

On February 4, 2010, Petitioner plead guilty to Count Thirteen of a fourteen-count indictment (3:09cr265 [Doc. # 1]) against Petitioner and eight other individuals charging him with knowingly, intentionally and unlawfully using a communications facility to facilitate the possession with intent to distribute and distribution of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 843(b). The parties executed a written plea agreement in which they agreed that "Caribe Billie agrees to plead guilty to Count Thirteen of the Indictment." (Plea Agreement, 9cr265 [Doc. # 96] at 1.) The parties stipulated that "the quantity of the mixture and substance containing a detectable amount of cocaine base which was part of the defendant's relevant and readily foreseeable conduct was in excess of 4 grams, but not more than 5 grams." (*Id.* at 3–4.) As part of the Plea Agreement, the Government agreed

to recommend a three-level reduction for acceptance of responsibility, and Petitioner agreed not to appeal or collaterally attack his sentence "if that sentence d[id] not exceed 48 months, a one year term of supervised release, and $60,000 fine." (*Id.*)

At the change of plea hearing held on February 4, 2010, Petitioner was placed under oath and stated in open court that he was "fully satisfied" with his attorney's representation (Plea Hr'g Tr., 9cr265 [Doc. # 236] at 10), and that no one had threatened him or intimidated him into pleading guilty, nor made any promises to him as to what his sentence would be (*id.* at 22). When asked to state in his own words what he was charged with, Petitioner stated, "[u]sing a phone to make a drug transaction" (*id.* at 29), the substance of which he then described in greater detail: "I made a phone call to Mr. Mohammad to purchase drugs in the amount of three grams . . . of cocaine base" (*id.*). The Court asked, "so you called Mr. Mohammad to purchase crack, some of which you intended to distribute," and Petitioner responded, "Yes." (*Id.* at 30.)

On April 26, 2010, the Court imposed a sentence of 30-months' imprisonment and a one-year term of supervised release. (Sent. Tr., 9cr265 [Doc. # 237] at 25.) on February 2, 2012, Defendant was released from incarceration.[1]

## II.    Discussion

To obtain collateral relief under 28 U.S.C. § 2255, a petitioner must show that his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Habeas corpus relief is an extraordinary remedy and should only be granted where it is necessary to redress errors that, were they left intact, would "inherently result in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424,

---

[1] *See* Federal Bureau of Prisons Inmate Locator for Caribe Demaris Billie, http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=18320-014&x=88&y=17 (*last visited* June 6, 2013).

428 (1962). As a general rule, "relief is available under § 2255 only for constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Napoli v. United States*, 32 F.3d 31, 35 (2d Cir. 1994).

In his § 2255 petition, Mr. Billie argues that his counsel was constitutionally ineffective (Pet. at 3), and that the Government committed prosecutorial misconduct (*id.* at 4). In support of his ineffective assistance of counsel claim, he alleges:

> (1) Failure to pursue Movant's desire for a speedy jury trial;
> (2) Failure to investigate, prepare, and argue the available defense of actual inno[ce]nce;
> (3) Failure to investigate and file a motion to suppress the recorded statement(s);
> (4) Failure to investigate, interview material witness(es);
> (5) Failure to investigate and review evidence with Movant;
> (6) Failing to investigate the facts and law involved before advising Movant to plead guilty, in that the guilty plea was coerced, unknowing, involuntary, and unintelligently resulting . . . ; and
> (7) Failing to bring to the attention of the [C]ourt misconduct of the prosecutor.

(Pet. Mem. Supp. [Doc. # 1-1] at 3.) As to his prosecutorial misconduct claim, Mr. Billie contends that "the prosecutor made known to [him] . . . that if [he] did not plead guilty that a superseding indictment would be sought and Movant given 20 years." (*Id.* at 15.)

In opposition to Petitioner's § 2255 petition, the Government asserts that Petitioner cannot meet the high bar for an ineffective assistance of counsel claim required by *Strickland* and *Hill*, and that his prosecutorial misconduct claim is precluded by the waiver contained in his Plea Agreement and his failure to raise the issue on direct appeal.

### A. Knowing and Voluntary Waiver

"Where the record clearly demonstrates that the defendant's waiver of [his] right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable." *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004). The Second Circuit has stated that "[k]nowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *Tellado v. United States*, 799 F. Supp. 2d 156, 176–77 (D. Conn. 2011) (quoting *United States v. Granik,* 386 F.3d 404, 412 (2d Cir.2004)). "The [ ] exceptions to the presumption of the enforceability of [an appellate or collateral attack] waiver . . . occupy a very circumscribed area of [Second Circuit] jurisprudence," *United States v. Gomez–Perez,* 215 F.3d 315, 319 (2d Cir. 2000), though a defendant may have a valid claim that the waiver of appellate rights is unenforceable when:

> [1] the waiver was not made knowingly, voluntarily, and competently, [2] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, [3] when the government breached the plea agreement, or [4] when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus.

*United States v. Buissereth,* 638 F.3d 114, 118 (2d Cir. 2011).

Mr. Billie does not specifically argue that any of these four scenarios was present, and the Court is confident that the waiver included in Petitioner's Plea Agreement was knowing and voluntary, as Mr. Billie signed the waiver, and stated in open court that he understood that he

> specifically agreed that [he] won't appeal or collaterally attack in any proceeding, including, but not limited to, motions under 28, United States

> Code, 2255 . . . the conviction or the sentence of imprisonment imposed by the Court if that sentence doesn't exceed 48 months, a one-year term of supervised release and a $60,000 fine no matter how the Court reaches that sentence.

(Plea Tr. at 23). Later in the hearing, the Court again asked him if he understood "all the rights that you are waiving, the right to trial and all the ones we've been discussing?" and he responded, "I do, yes." (*Id.* at 27.) Therefore, on the basis of this record, the waiver of appeal and collateral attack rights contained in the Plea Agreement should be enforced.

However, while Mr. Billie does not claim that counsel was ineffective with respect to the particular decision to waive his appellate and collateral attack rights, he does claim that his guilty plea was "coerced," both by the Government's threats and by specific failures of his counsel, and was thus invalid. The Court therefore considers Mr. Billie's claims of ineffective assistance of counsel.

### B.  Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel challenging a guilty plea is assessed under the two–pronged standard first articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), and as further construed by *Hill v. Lockhart*. *See Hill*, 474 U.S. 52, 58 (1985) ("We hold therefore that the two–part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."). The first prong considers whether counsel's performance was objectively unreasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688. To satisfy this element, an error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and counsel's performance must have been "outside the wide range of professionally competent assistance," *id.* at 690. Second, the petitioner must affirmatively prove prejudice by showing that counsel's errors were so serious that

"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. In the context of a plea agreement, this means that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### 1. Failures to Investigate, Conduct Discovery, and Argue Actual Innocence

Petitioner asserts that defense counsel failed to conduct a proper investigation into the allegations against him, in that his attorney failed to interview Muhammad, a co-defendant in petitioner's case, who could have testified at Mr. Billie's trial that "at no time was the [wiretap] conversation in reference to any drug activities." (Pet.'r Mem. at 7.)

In opposition, the Government contends that the strength of its case against Petitioner, including evidence of "multiple intercepted phone conversations arranging drug transactions and contemporaneous surveillance conducted by agents of the petitioner meeting with co-defendants and engaging in activities consistent with drug trafficking, as well as evidence of multiple seizures of crack cocaine recovered from co-conspirators" (Gov't Opp'n [Doc. # 6] at 17), belies any actual innocence or ineffective assistance of counsel claim asserted by Petitioner. At his plea allocution, the Government was asked to summarize its case against Mr. Billie, and AUSA Friemann represented:

> The defendant's case is part of a wiretap investigation that focused on Stamford area drug trafficking organizations and their New York-based sources. The government obtained wiretaps over a total of five different phones over the course of the investigation based, in part, on information provided by cooperating witnesses and multiple controlled purchases. . . . On October 7, 2009 the defendant was intercepted over Target Telephone 3 making plans to pick up crack cocaine from Mohammad. He told Mohammad that he wanted to, quote, double up, and he needed, quote, eight, a reference to an eight-ball . . . . Surveillance then monitored the

>defendant arriving at Mohammad's residence, enter and leave within 15 minutes, and then drive to the residence of one of Mohammad's co-defendants. . . . Afterwards the defendant was again intercepted over Target Telephone 3 telling Mohammad that he, quote, gave the young boys the stuff, a reference to street dealers who worked for Mohammad. . . .
>
>If the case were to proceed to trial, the government would be prepared to offer the testimony of the cooperating witnesses regarding the nature of the drug conspiracy and the controlled purchases involving Mohammad; we'd present phone calls . . . those in which the defendant was intercepted, as well as testimony regarding the logistics of a wiretap; we'd be prepared to offer the testimony of the chemist who conducted lab tests on the seized narcotics; we'd also present the law enforcement officers who conducted surveillance on October 7, 2009; as well as video footage.

(Plea Tr. at 31–33.) The Court then asked Mr. Billie whether he agreed with the Government's summary of what he did, and Petitioner responded, "I do agree with it." (*Id.* at 33.)

The Government also provided two affidavits from Petitioner's counsel, Attorney Kurt Zimmerman, that address Petitioner's claims that Attorney Zimmerman failed to conduct adequate discovery and failed to interview Muhammad.[2] Attorney Zimmerman

---

[2] These affidavits were provided based on Attorney Zimmerman's position that in light of Petitioner's ineffective assistance of counsel claims, Petitioner has waived the right to oppose disclosure of any attorney-client communications which would otherwise have remained privileged and confidential, in accordance with the Second Circuit jurisprudence on waiver of testimonial privileges. *See, e.g.*, *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) ("a waiver may be implied in circumstances where it is called for in the interests of fairness. "[F]airness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.'" (citing *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000))). The Second Circuit has recognized that "implied waiver may be found where the privilege holder," here, Mr. Billie, "asserts a claim that in fairness requires examination of protected communications." *In re Grand Jury Proceedings*, 219 F.3d at 182. Given that several of Mr. Billie's claims of ineffective assistance of counsel are focused on counsel's alleged failures in the investigation, discovery, and pre-guilty plea aspect of his representation, the Court finds that Mr. Billie has impliedly waived attorney-client privilege and will consider Attorney Zimmerman's affidavits.

7

attests that during his initial meetings with Petitioner, Petitioner told him that he was "innocent of the charge in Count 13, and that the intercepted telephone conversations between Petitioner and Lut Muhammad were conversations that had as their subject sports betting transactions," and that he advised Petitioner that it would be "futile to file the necessary motion to sever and motion for immediate trial . . . and the request to suppress the wiretap evidence . . . should be deferred until Counsel and Petitioner had th[o]roughly reviewed the discovery materials provided by the government." (Zimmerman Aff. [Doc. # 6-1] ¶ 8.) Attorney Zimmerman further attested that per Petitioner's request, he contacted Muhammad's CJA counsel, though "I did not receive any indication from Muhammad's Attorney that I would be permitted to interview his client." (*Id.* ¶ 11.) In subsequent meetings, Petitioner and Attorney Zimmerman went over the "line sheets," or summary transcripts of the intercepted phone calls. (*Id.* ¶ 12.)

In his affidavit, Attorney Zimmerman describes Petitioner's January 22, 2010 meeting with the Government, which Petitioner had requested "so that he could demonstrate that he was not discussing drugs with Muhammad in the telephone calls." (*Id.* ¶ 12.) Zimmerman attests that although at first Petitioner maintained that the conversations "were discussions of Muhammad's and Petitioner's betting on sporting events," after the agents informed Petitioner that surveillance had been conducted and that the terms used in the phone conversations with Muhammad "were identical to the drug dealing jargon that was employed by Petitioner's co-defendants," about 30 minutes into the meeting, "Petitioner . . . spontaneously said to the agents . . . that they had it 'right'—that Petitioner had purchased crack cocaine from Muhammad; that the recorded phone calls involved arrangements for Petitioner's purchases." (*Id.* ¶¶ 15–16.) The parties

eventually agreed to a plea agreement, which provided that the quantity of cocaine base attributable to Petitioner "be consistent with Petitioner's proffer information," rather than the larger amount that had originally been "assigned" to the Petitioner by the Government. (*Id.* ¶ 17.)

In the face of the strong evidence of Petitioner's guilt, Petitioner cannot prove the "prejudice" prong under *Strickland* and *Hill* and show that were it not for counsel's deficient performance, he would not have pleaded guilty under these circumstances. *See Matos v. United States*, 166 F.3d 1200, 1998 WL 852315, at *3 (2d Cir. Dec. 1, 1998) ("[W]here the evidence of guilt is overwhelming, we may dispose of the case based on the petitioner's lack of prejudice, without evaluating counsel's performance."). Further, considering Attorney Zimmerman's described activities representing petitioner under *Strickland*'s first prong, the Court finds no basis for concluding that his representation of Petitioner, including advising him to consider the evidence against him prior to moving to sever and proceeding to trial, and ultimately that pleading guilty was in his best interest, was in any way constitutionally deficient.

2. *Failure to Argue Actual Innocence*

As to his claim that he is "actually innocent" (Pet'r Mem. at 1), Petitioner must overcome "a strong presumption of veracity" that the statements he made under oath at his plea allocution, in which he admitted to purchasing drugs over the phone, were false. *See Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's self-inculpatory statements made under oath at his plea allocution 'carry a strong presumption of verity,' . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.") (internal citations omitted); *see United States Gryzbek*, 283 F. App'x 843, 845 (2d Cir. 2008) ("[T]o the extent that the district

9

court might have considered [defendant's] later claim of innocence, it was not error to decline to credit that claim over the statements he made at his plea hearing."). Petitioner has not provided the Court with any new evidence of actual innocence, save for his own affidavit, which, on its own, does not overcome the strong presumption that Petitioner was telling the truth when he stated under oath that he was guilty of Count Thirteen of the Indictment against him, and is insufficient to support his ineffective assistance of counsel claim.

### 3.  *Failure to Move to Suppress Wiretap Recording*

In response to Petitioner's claim that his attorney should have moved to suppress the taped conversation in which Petitioner told Muhammad that he wanted to "double up," Attorney Zimmerman attests that after reviewing the discovery material, he made a strategic decision not to file a motion to suppress. (Zimmerman Suppl. Aff. ¶ 8.) He notes that "[o]ther counsel in the case (including Lut Muhammad's CJA representative) did file or adopt motions to suppress the recorded conversations . . . [which] were reviewed by Counsel and they did not change Counsel's assessment of the merits of a motion to suppress the intercepts." (*Id.*) Indeed, the Court considered and rejected Mr. Muhammad's motion to suppress, also adopted by two other co-defendants, and concluded that the wiretaps at issue were lawful. (*See* Ruling on Motions, 9cr265 [Doc. # 194] at 10.)

Where a petitioner claims ineffective assistance of counsel on account of a defense attorney's failure to litigate a Fourth Amendment claim, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375

(1986). In support of this argument, Petitioner asserts only that "he had a legal standing to challenge the taped recording," and that "absent the taped recording, he could not have, and would not have been convicted" (Pet'r Mem. at 9), however, Petitioner does not describe what the substance of the challenge would have been, or why it would have been meritorious. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. at 690–91. Here, Petitioner has not provided the Court with any evidence to rebut Attorney Zimmerman's statements that he "did explore the merits of filing a motion to suppress the wire intercept evidence" (Zimmerman Suppl. Aff. ¶ 8), but determined that it was not a sound strategic decision. Furthermore, even "strategic choices made after less than complete investigation are reasonable . . . to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. As Petitioner offers no evidence from which the Court could conclude that Attorney Zimmerman's decision declining to move to suppress was an unreasonable decision, or that such a motion would have been meritorious if made, this ground for ineffective assistance of counsel must fail.

### 4. Coerced Guilty Plea

Petitioner also contends that counsel allowed the Government to "coerce" his guilty plea, because the Government threatened him that "if he did not plead guilty, . . . a superseding indictment would be sought, and [he] would be sentenced to 20 years." (Pet'r Mem. at 14.) Attorney Zimmerman disputes Petitioner's characterization of the circumstances surrounding the decision to plead guilty, and represents that "I explained to Petitioner the limited options that were available to Petitioner . . . . Petitioner's truthful

statements at the proffer session meant that he could not take the stand at a trial."

(Zimmerman Suppl. Aff. ¶ 10.)³ Attorney Zimmerman further stated,

> [t]he best, and really the only course that could be taken at that point was to pursue a plea agreement involving a § 843(b) charge and not risk being named in a § 846 conspiracy count which had been mentioned by the government as being in the offing by way of a superceding indictment."

(*Id.*)

As discussed above, given the strength of the Government's case against Mr. Billie and the inculpatory statements he made during the January 22, 2010 proffer session, Counsel's advice to Petitioner that a guilty plea to a lesser charge than conspiracy was the "best course" available to him was wholly reasonable under prevailing professional standards. Further, in light of the ample record of Petitioner's own admissions of guilt, made during this proffer session and under oath at his Plea Allocution on February 4, 2010, Petitioner also has not satisfied the "prejudice" prong under *Hill*.

In sum, Petitioner has failed to make a convincing case for ineffective assistance of counsel under either *Strickland* prong.

### C. Prosecutorial Misconduct

Petitioner claims prosecutorial misconduct because "the prosecuting [attorney] was 'threatening' more serious charges and a 20 year prison sentence." (Pet'r Aff. [Doc.

---

³ Based on Attorney Zimmerman's affidavit, the record cannot support Petitioner's claim that his counsel failed to pursue a speedy jury trial. Only sixty-three days elapsed between Petitioner's arrest on December 3, 2009 and his guilty plea on February 4, 2010, which does not exceed the seventy-day limit for trial. *See* 18 U.S.C. § 3161(c)(1). Further, Petitioner decided to disclose to the Government his role in the offense at the proffer session held on January 22, 2010, and after that point, Attorney Zimmerman attests that "of course trial was no longer a real option." (Zimmerman Suppl. Aff. [Doc. # 6-2] ¶ 9.) Thus, Petitioner cannot establish the grounds for a speedy trial violation as a basis for an ineffective assistance of counsel claim.

# 1-2] ¶ 9.) "While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). That the Government told Petitioner it could charge him with a conspiracy count that carried a much longer potential sentencing exposure as part of the plea negotiation process does not render the Government's conduct improper. *See United States v. Goodwin*, 457 U.S. 368, 382 (1982) ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher*, the initial charges filed by a prosecutor *may not reflect the extent to which an individual is legitimately subject to prosecution.*") (emphasis added).

Moreover, unlike claims of ineffective assistance of counsel, claims of prosecutorial misconduct are subject to waiver by a guilty plea. *See United States v. Lawson*, 205 F.3d 1326, 2000 WL 232282 (2d Cir. Feb. 28, 2000) ("Finally, a prosecutorial misconduct claim is a nonjurisdictional appeal subject to waiver by Lawson's plea.") (citing *United States v. Simmons,* 763 F.2d 529, 533 (2d Cir.1985)); *see also Brown v. United States*, 637 F. Supp. 2d 212, 217 (S.D.N.Y. 2009) ("Brown's claims of vindictive prosecutorial misconduct, . . . are barred by his plea agreement to waive collateral attack of a below guideline sentence."). Because the Court has found that Petitioner's guilty plea, including his waiver of appellate and collateral attack rights, was knowing and voluntary, Petitioner's prosecutorial misconduct claim is precluded on this ground as well.

### D. Evidentiary Hearing

Although Petitioner requests an evidentiary hearing, one is not required here, as the record plainly demonstrates that Petitioner is not entitled to relief and his claims are without merit. *See United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992) ("No evidentiary hearing was required on the basis of these unsupported allegations, which merely contradicted Gonzalez' earlier statements made under oath at his plea allocution."); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (statements at plea allocution "carry a strong presumption of verity"); *United States v. Bambulas*, 571 F.2d 525, 526 (10th Cir. 1978) (statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth"). Because it is plain from the record that Mr. Billie's petition lacks any meritorious claim, no evidentiary hearing is necessary.

### III. Conclusion

For the reasons discussed above, Mr. Billie's Petition [Doc. #1] for a writ of habeas corpus and for an evidentiary hearing is DENIED. The Clerk is directed to close the case.

The only remaining issue is whether to issue a Certificate of Appealability ("COA"). Under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right." *Id.* In order to sustain this burden, Petitioner would have to show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citations omitted).

"Where a district court has rejected [a petitioner's] claim[] on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong." *Id.* Here, the Court does not find that reasonable jurists could disagree on whether Mr. Billie's claim of ineffective assistance of counsel was "adequate to deserve encouragement to proceed further," *Slack*, 579 U.S. at 484, and therefore declines to issue a COA.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of June, 2013.